UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DEJEAN** | * | CIVIL ACTION |
| | * | |
| **VERSUS** | * | NO. 22-165 |
| | * | |
| **JEFFERSON PARISH SHERRIFF OFFICE** | * | SECTION: "L" (5) |
| | * | |
| | * | |

## ORDER AND REASONS

Before the Court is a Motion to Dismiss for Failure to State a Claim by Defendant Joseph P. Lopinto, III, in his capacity as sheriff of Jefferson Parish. R. Doc. 13. Plaintiff Henry DeJean has filed a memorandum in opposition. R. Doc. 15. Defendant has also submitted a reply memorandum. R. Doc. 20. Having considered the briefing, the exhibits, and the applicable law, the Court rules as follows.

I.   **BACKGROUND**

This case arises out of alleged racial discrimination against the Plaintiff Henry DeJean ("DeJean") by employees of the Jefferson Parish Sherriff Office ("JPSO"). On January 26, 2022, Plaintiff filed the instant complaint against Defendant Sheriff Joseph P. Lopinto, III ("Lopinto"). R. Doc. 7-1. Plaintiff claims he was racially discriminated against, targeted, and harassed during his employment as a deputy at JSPO by employees acting within the scope of their employment. *Id.* Plaintiff alleges that he began suffering from racial discrimination, targeting, and harassment in May 2019 when he was transferred to Road Patrol in the 2nd District under supervisor Lieutenant Oliver Silvey. *Id.* Allegedly, fellow deputies and superiors began discriminating, targeting, and harassing the Plaintiff after he complained to Lieutenant Silvey about the preferential treatment of another deputy, Michelle Nelson. *Id.* Plaintiff alleges numerous

1

instances in which he responded to a call while on duty, after which a supervisor would complain about his behavior. *Id.* at 4-11. Subsequently, Plaintiff's supervisors would file a complaint within JPSO about his alleged conduct, yet evidentiary support offered by Plaintiff to defend himself was ignored. *Id.* This allegedly resulted in Plaintiff receiving multiple Article 57 Unsatisfactory Performance violations, as well as Letters of Reprimand resulting in suspensions. *Id.* Plaintiff alleges that he attempted moving departments and shifts to avoid the discrimination, harassment, and targeting, however he suffered the same treatment each time he moved. *Id.*

Plaintiff brings six causes of action against Defendant. Plaintiff alleges that Defendant, who is the public entity responsible for JPSO, and his agents, racially discriminated against, harassed, and targeted Plaintiff in violation of 42 U.S.C. § 1981, 42 U.S.C. § 2000e, known as Title VII, and the Louisiana Employment Discrimination Law (LEDL) because Defendant "intentionally deprived DeJean of the same rights enjoyed by white citizens to the creation, performance, enjoyment and all benefits and privileges of their contractual employment relationship with Defendant." *Id.* at 12. Plaintiff also brings claims of retaliation, hostile work environment, racially disparate treatment, and conspiracy to violate human rights.

## II.   PRESENT MOTION

Defendant now moves this Court to dismiss all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. R. Doc. 13. Defendant argues that Plaintiff does not provide any actual factual allegations to support his claims, but merely "ambiguous allegations [which] do not meet the pleading standard." R. Doc. 13 at 11. Defendant contends that there is no proven connection because "De[J]ean makes numerous ambiguous references to discrimination (and retaliation and harassment) in his Complaint without providing details to establish that he can plausibly allege

such claims." *Id.* at 14.

Further, Defendant contends that the discriminatory or harassing conduct Plaintiff alleges cannot be shown to be racially motivated. *Id.* at 8; 11; 14. Defendant argues that Plaintiff fails to "set forth facts that he was treated less favorably than other similarly situated employees outside the protected group," notably by "pointing to employees with similar violations who were subject to less egregious adverse employment actions." *Id.* at 15. Instead, Defendant asserts that Plaintiff merely states that he believes those actions were racially motivated, with no supporting evidence that others in the same situation who are not in his protected class were treated differently. *Id.* Additionally, Defendant points out that Plaintiff does not accuse any of the individuals in Internal Affairs ("IA") to have behaved discriminatorily, and none of the individuals who he does allege participated in this behavior "had any decision-making powers (or any input) in the disciplinary action rendered." *Id.* at 11. Thus, Defendant argues that Plaintiff cannot show that any actions allegedly taken against him were retaliatory or discriminatory.

Additionally, Defendant contends that Plaintiff was unable to prove a hostile work environment, pointing out that only one of the comments Plaintiff alleges had any racial content, and that "[s]imple teasing, offhand comments, and isolated incidents (unless extremely severe) . . . are not enough to establish a hostile work environment claim." *Id.* at 6. Likewise, Defendant argues that Plaintiff cannot show any adverse employment action, stating that "unpleasant work meetings, verbal reprimands, improper work requests and unfair treatment are not considered actionable adverse employment actions as discrimination or retaliation." *Id.* at 10-11; 15. Defendant argues that disciplinary filings and poor performance by the employee do not legally constitute adverse employment action, nor can Plaintiff provide sufficient facts to "plausibly suggest that he was constructively discharged by the Defendant." *Id.* at 16.

3

In response, Plaintiff argues that, at the very least, the racially charged comment he alleges that Lieutenant Marion made to him—"just because you are black, you don't have to be so stupid"—proves "direct discrimination which any objective observer would find harassing." R. Doc. 15 at 8-9. In addition, Plaintiff argues that he has alleged facts showing patterns of behaviors which constitute discrimination and harassment. *Id.* at 14. Plaintiff argues that these allegations at minimum sufficiently satisfy the pleading requirements and allow his claims to survive Defendant's Rule 12(b)(6) motion.

### III.  APPLICABLE LAW

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. A claim is plausible on its face when the plaintiff has pled facts sufficient to allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570. Although a court must liberally construe the complaint in the light most favorable to the plaintiff, accept the plaintiff's allegations as true, and draw all reasonable inferences in favor of the plaintiff, *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996), courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

## IV. ANALYSIS

Plaintiff's claims may be divided into four categories: (1) hostile work environment claims under Title VII; (2) claims of retaliation under Title VII and the LEDL; (3) claims of race discrimination under Section 1981, Title VII, and the LEDL, and; (4) claims of conspiracy to violate human rights under La. R.S. 51:2256. The Court will discuss each in turn.

### A. Hostile Workplace Environment

To state a claim that he has suffered a hostile workplace environment under Title VII based on racial harassment or discrimination, Plaintiff must allege that (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege or employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 125 (5th Cir. 2011) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

Workplace harassment affects a term, condition, or privilege of employment when it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hernandez*, 670 F.3d at 651 (quotation omitted). This standard does not require a "tangible psychological injury," but it does necessitate more than a "mere utterance of an . . . epithet which engenders offensive feelings in a[n] employee." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, (1986)). To determine whether the conditions of employment have been altered to the extent that the workplace has become "hostile," courts consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

with an employee's work performance." *Hernandez*, 670 F.3d at 651 (quoting *Ramsey*, 286 F.3d at 268). In addition, "the work environment must be 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, (1998)).

Here, there is no dispute that Plaintiff is African American, and thus a member of a protected class based on his race. Plaintiff alleges, inter alia, that Lieutenant Marion used explicitly racist and demeaning language towards him, that this harassment was so severe that it essentially constituted constructive dismissal, and that he complained about this treatment to his captains. At the Rule 12(b)(6) stage, taking the facts alleged in the light most favorable to the Defendant, this is adequate to state a claim upon which relief may be granted. Accordingly, Defendant's motion to dismiss Plaintiff's claims based on a hostile workplace environment is DENIED.

### B. Retaliation Under Title VII and the LEDL

To state a claim for retaliation under Title VII, or the LEDL, a plaintiff must plead facts showing: "(1) that [he] engaged in [protected] activity . . ., (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Cuellar v. Sw. Gen. Emergency Physicians, P.L.L.C.*, 656 Fed. Appx. 707, 709 (5th Cir. 2016) (internal quotation marks omitted). An employee has engaged in a protected activity when he has "either (1) opposed any practice made an unlawful employment practice by Title VII or (2) . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (citation omitted).

Here, Defendant argues that Plaintiff does not plausibly allege that he engaged in any

protected activity, nor that he suffered any adverse employment action. As to whether he engaged in a protected activity, protected activity can consist of either (1) opposition- "opposing any practice made an unlawful employment practice by Title VII," or (2) participation - "making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII." *Saketkoo v. Tulane Univ. Sch. of Med.*, 510 F. Supp. 3d 376, 393 (E.D. La. Dec. 31, 2020) (quoting *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016)). However, as Plaintiff points out, for a plaintiff's action to count as "opposition," the opposed conduct need not, in fact, violate Title VII; rather, the employee must only have "reasonably believed the employment practice to be unlawful" under Title VII, and that, in some circumstances, an "informal complaint to a supervisor regarding an unlawful employment practice may satisfy the opposition clause." *Id.* at 394 (quoting *Tureaud v. Grambling State Univ.*, 294 F. App'x 909, 914–15 (5th Cir. 2008) (per curiam)). Plaintiff contends he was retaliated against for opposing disparate treatment, including, inter alia, his initial complaint concerning Deputy Nelson, and complaints to Lieutenant Marion, Chief Wingrove and Captain Dyess. At the 12(b)(6) stage, Plaintiff has thus adequately pleaded that he engaged in a protected activity.

As to whether he has suffered an adverse employment action, Plaintiff has pleaded that, as a result of his engaging in this protected activity, he was, inter alia, suspended multiple times and placed on probation for a year, as well as arguing that Defendant's alleged treatment of him constituted constructive dismissal. At the 12(b)(6) stage, Plaintiff has thus adequately pleaded that he suffered an adverse employment action as a result of engaging in a protected activity. Accordingly, Defendant's motion to dismiss Plaintiff's claims based on retaliation is DENIED.

    **C. Racial Discrimination Under § 1981, Title VII, and the LEDL**

To maintain a claim of disparate treatment discrimination under § 1981, Title VII, and the LEDL, a plaintiff must offer direct evidence of discrimination or utilize the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995). "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." *Bodenheimer v. PPG Indus. Inc.*, 5 F.3d 955, 958 (5th Cir. 1993). For a statement to constitute direct evidence of discrimination, the statement must be "direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that [the protected trait] was an impermissible factor in the decision to terminate the employee.'" *Maestas v. Apple, Inc.*, 546 F. App'x 422, 427-28 (5th Cir. 2013) (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5th Cir. 2010)). Under the *McDonnell Douglas* indirect method of proof, a plaintiff must establish a *prima facie* case of discrimination with allegations and proof that the plaintiff (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated less favorably than those outside the protected class. *Rutherford v. Harris County*, 197 F.3d 173, 184 (5th Cir. 1999).

Here, Plaintiff has alleged direct evidence of racial animus at minimum in Lieutenant Marion's comment to him that "just because you are black, you don't have to be so stupid." *See* R. Doc. 10. Plaintiff also alleges that Lieutenant Marion then filed a false or misleading complaint against him motivated by racial animus. At the 12(b)(6) stage, taking the allegations in the light most favorable to the Plaintiff, these actions adequately allege evidence of discrimination which if believed by a jury or other trier of fact, would prove the existence of . . . unlawful discrimination . . . without any inferences or presumptions." *Bodenheimer*, 5 F.3d at

8

958. Accordingly, Defendant's motion to dismiss Plaintiff's claims of disparate treatment based on race is DENIED.

### D.  Conspiracy Under La. R.S. 51:2256

La. R.S. 51:2256 states, in pertinent part, that [i]t shall be an unlawful practice for a person or for two or more persons to conspire. . . [t]o retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this Chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this Chapter." Defendant argues that because Plaintiff has already asserted claims against Defendant for retaliation under Title VII and the LEDL, Plaintiff's claims under La. R.S. 51:2256 are duplicative. But, as Plaintiff argues, Defendant offers no legal support for its argument that a claim for conspiracy under La. R.S. 51:2256 is duplicative of a claim for retaliation under either Title VII or the LEDL, and the Court has found none. Accordingly, the Court declines to hold that Plaintiff's claim for La. R.S. 51:2256 conspiracy is duplicative of his retaliation claims.

Defendant additionally argues that Plaintiff's assertions are too vague to plausibly state a claim for conspiracy under La. R.S. 51:225. But, as the Court has held *supra*, Plaintiff has adequately pleaded his claims for retaliation to survive 12(b)(6) dismissal, and he has pleaded that two or more people conspired in that alleged retaliation. Accordingly, Defendant's motion to dismiss Plaintiff's claim for La. R.S. 51:2256 conspiracy is DENIED.

### V.    JUDGMENT

For the foregoing reasons, Defendant's Motion to Dismiss, R. Doc. 13, is hereby **DENIED**.

9

New Orleans, Louisiana, this 12th day of May, 2023.

_____
**THE HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE**