**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **HENRY DEJEAN** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 22-165** |
| **JEFFERSON PARISH SHERIFF OFFICE** | * | **SECTION L** |

<u>**ORDER & REASONS**</u>

Before the Court is a motion for summary judgment filed by Defendant Joseph P. Lopinto, III, in his official capacity of Jeferson Parish Sheriff's Office ("JPSO"). R. Doc. 46. Plaintiff Henry DeJean opposes. R. Doc. 53. JPSO filed a reply. R. Doc. 54. Considering the briefing and the applicable law, the Court rules as follows.

## I.      BACKGROUND

This case arises out of alleged racial discrimination against the Plaintiff Henry DeJean ("DeJean") by employees of Defendant Jefferson Parish Sherriff Office ("JPSO"). On January 26, 2022, DeJean filed a complaint against Defendant Joseph P. Lopinto, III ("Lopinto"). R. Doc. 7-1. DeJean claims he was racially discriminated against, targeted, and harassed during his employment at Jefferson Parish Sheriff's Office ("JPSO") by employees acting within the scope of their employment. *Id.* DeJean alleges that he began suffering from racial discrimination, targeting, and harassment in May 2019 when transferred at his request to Road Patrol in the Second District under supervisor Lt. Oliver Silvey. *Id.* Allegedly, fellow deputies and superiors began discriminating, targeting, and harassment after DeJean complained to supervisor Lt. Silvey about preferential treatment by Deputy Michelle Nelson. *Id.* In the complaint, DeJean alleges numerous instances in which he responded to a call while on duty, after which a supervisor would complain about his behavior. *Id.* at 4-11. Subsequently, DeJean's supervisors would file a

1

complaint within JPSO through the Internal Affairs Department ("IAD"), yet evidentiary support offered by DeJean to defend himself was allegedly ignored. *Id.* DeJean argues this resulted in him receiving multiple Article 57 Unsatisfactory Performance violations, as well as Letters of Reprimand resulting in suspensions. *Id.* DeJean attempted moving shifts under Lt. Marion to avoid the discrimination, harassment, and targeting; however, he suffered the same treatment. *Id.* It was only when DeJean was moved out of the Second District to the Fourth District that his situation improved. Despite moving to an entirely different district, however, DeJean continued to receive written reprimands and punishment from the alleged violations in the Second District. DeJean avers this is the reason he resigned from JPSO.

DeJean alleges several causes of action against Defendant. First, DeJean alleges that Defendant, who is the public entity responsible for JPSO, and his agents racially discriminated, harassed, and targeted him, violating the Title VII of the Civil Rights Act, and the Louisiana Employment Discrimination Law ("LEDL") because Defendant "intentionally deprived DeJean of the same rights enjoyed by white citizens to the creation, performance, enjoyment and all benefits and privileges of their contractual employment relationship with Defendant." *Id.* at 12. DeJean also brings claims of race-based retaliation, race-based hostile work environment, racial disparate treatment, and conspiracy to violate human rights. R. Doc. 10 at p. 12-17.

## II.    APPLICABLE LAW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c*); Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

## III.   DISCUSSION

The Defendant seeks dismissal of all DeJean's claims. The Court addresses each one of Plaintiff's claims in turn.

### A.  Title VII, LEDL, and 42 U.S.C. § 1981 Racial Discrimination Claims

First, the Court will address DeJean's racial discrimination claims under Title VII, LEDL, and 42 U.S.C. § 1981 simultaneously because the analysis of each claim is identical. *Chen v. Ochsner Clinic Found.*, 630 F. App'x 218, 227 (5th Cir. 2015); *Woods v. Cantrell*, No. 20-482, 2021 WL 981612 at *13 (E.D. La. Mar. 16, 2021). To establish a *prima facie* case for racial discrimination, the plaintiff must demonstrate that they (1) are a member of a protected class; (2) were qualified for the position; (3) suffered an adverse employment action; and (4) were treated less favorably than those similarly situated outside the protected class. *Rutherford v. Harris County*, 197 F.3d 173, 184 (5th Cir. 1999). Once the plaintiff establishes the *prima facie* case, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the employment action." *Id.* If the employer succeeds, "the plaintiff counters by offering evidence that the legitimate, non-discriminatory reasons are really a pretext for discrimination." *Id.* at 180 (quoting *Casarez v. Burlington Northern/Santa Fe Co.*, 193 F.3d 334, 337 (5th Cir. 1999)).

3

Courts evaluate discrimination claims differently depending on whether the plaintiff presents direct or circumstantial evidence. "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." *Bodenheimer v. PPG Indus. Inc.*, 5 F.3d 955, 958 (5th Cir. 1993). For a statement to constitute direct evidence of discrimination, the statement must be "direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that [discrimination] was an impermissible factor in the decision to terminate the employee.'" *Maestas v. Apple, Inc.*, 546 F. App'x 422, 427-28 (5th Cir. 2013) (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5th Cir. 2010)). If a plaintiff lacks direct evidence of discrimination, they may rely upon the *McDonnell Douglas Corp. v. Green* indirect method of proof. 411 U.S. 792 (1973). "The well-established *McDonnell Douglas* framework is applied to consideration of disparate treatment claims brought under Title VII, § 1981, and the LEDL." *Alleman v. La. Dept. of Econ. Dvp.*, 698 F. Supp. 2d 644, 658 (M.D. La. 2010).

Here, the Defendant argues summary judgment is appropriate because DeJean failed to show that he suffered an adverse employment decision in the form of a constructive discharge and has not identified a viable employee-comparator. In the alternative, the Defendant alleges that JPSO had legitimate, nondiscriminatory reasons for their disciplinary actions, and that DeJean is unable to prove that the stated reasons are pretext for racial discrimination. The Court addresses each argument separately.

### 1.  Whether DeJean Was Constructively Discharged

The Fifth Circuit has recently defined the scope of an "adverse employment action" under Title VII to include disparate treatment in hiring, firing, compensation, or the terms, conditions, or privileges of employment, even if such actions were not ultimate employment

4

decisions. *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 506 (5th Cir. 2023). An employee who voluntarily resigns from their position may still bring a Title VII racial discrimination claim against their employer under the theory of constructive discharge. *See Haley v. Alliance Compressor LLC,* 391 F.3d 644, 649 (5th Cir. 2004). A constructive discharge occurs when an employee has quit their job under circumstances that are treated as an involuntary termination of employment. *Id.* To prove constructive discharge, however, a plaintiff must show that working conditions were so intolerable that "a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders,* 542 U.S. 129, 141 (2004). The environment must be "something more" than that present in a harassment or hostile work environment claim; a plaintiff must show a "'worse case' harassment scenario, harassment ratcheted up to the breaking point." *Id.* at 147–48. In analyzing whether constructive discharge occurred, a court must look to the individual facts of each case without regard to the employee's subjective state of mind. *Barrow v. New Orleans S.S. Ass'n,* 10 F.3d 292, 297 (5th Cir.1994). The following nonexclusive list of factors are relevant to this determination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a less experienced or qualified supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; and (7) offers of early retirement that would make the employee worse off regardless of whether the offer was accepted or not. *Id.* The resigning employee bears the burden to prove constructive discharge. *Jurgens v. E.E.O.C.,* 903 F.2d 386, 390–91 (5th Cir. 1990).

Here, the Defendant avers that because DeJean submitted a complimentary letter upon his resignation from JPSO in May 2021 and spoke highly of his time employed in the Fourth District, he is unable to prove constructive discharge. R. Doc. 46-2 at 20-21. The Court finds this

argument unpersuasive. These statements and testimony do not negate the ongoing issues DeJean had with JPSO related to his time working in the Second District, which is where he argues the alleged discrimination occurred. Instead, plaintiff's allegations present three of the factors listed in *Barrow*, namely (1) badgering, harassment, or humiliation calculated to encourage resignation; (2) demotion; and (3) salary reduction. DeJean has provided deposition testimony as well as multiple emails and other documents stating his immediate supervisors in the Second District were "targeting and harassing" him and that he felt like he was being set up for termination. R. Doc. 53-12 at 1527-1529; R. Doc. 53-14 at 1650-1652. Additionally, DeJean argues that he was improperly stripped of his status as a Field Training Officer, resulting in a reduction of his salary. R. Doc. 53-11; R. Doc. 53-2 at 20; R. Doc. 46-13 at 648; R. Doc. 46-16 at 1542-1543. He alleges that these adverse actions taken by JPSO against him and the subsequent written reprimands he received ultimately compelled his resignation. R. Doc. 53-2 at 20. Because DeJean has presented evidence sufficient to support his constructive discharge claim, there exists a genuine issue of material fact.

## 2. Whether Doubleday or Chaisson Are Viable Comparators

A plaintiff can demonstrate an inference of a disparate treatment by showing that a comparative employee outside the plaintiff's protected group was treated more favorably under similar circumstances. *Morra-Morrison v. U.S. Postal Service*, EEOC No. 01962057 (1996). Generally, "employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee v. Kan. City S. Ry.*, 574 F.3d 253, 260 (5th Cir. 2009). Employees who were the subject of adverse employment actions

too remote in time from that taken against the plaintiff, who have different work responsibilities, or who are subjected to adverse employment actions for dissimilar violations are not similarly situated. *Morris v. Town of Indep.*, 827 F.3d 396, 401 (5th Cir. 2016). The plaintiff's conduct that drew the adverse employment decision must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions. *Id.* If the difference between the plaintiff's conduct and the conduct of those alleged to be similarly situated accounts for the difference in treatment received from the employer, the employees are not similarly situated for the purpose of establishing an employment discrimination claim. *Id.*

Here, Defendant argues that DeJean has not produced any evidence to establish a viable comparator-employee to support his prima facie racial discrimination claims. R. Doc. 46-2 at 22-23. In his opposition, DeJean has provided two employee-comparators: Deputy Alex Doubleday and Deputy Ted Chaisson. Doubleday and Chaisson both held the same position of deputy as DeJean, had the same supervisors, and were of a different race than DeJean. R. Doc. 53-2 at 20-24. DeJean alleges Doubleday is a valid comparator because they both made complaints about Lt. Marion and were found in violation of "Art. 57 Unsatisfactory Performance" for safety issues, but Doubleday was given therapy sessions and no discipline while DeJean was suspended for several days. *Id.*; R. Doc. 46-19. Further, he avers Chaisson made a complaint against DeJean and was promptly removed to another patrol while DeJean was forced to wait many months before being moved from Lt. Marion's patrol. R. Doc. 53-2. The Court finds that Plaintiff has provided enough evidence, such that DeJean may be adequately compared to both Doubleday and Chaisson. At the very least, then, a material dispute of fact exists as to whether he can show disparate treatment.[1]

---

[1] During the Court's final review of the pending motion, Plaintiff filed a Motion for Leave to File a Sur Reply to

### 3.  Whether DeJean Has Produced Sufficient Evidence to Prove Pretext

After the employer produces legitimate, non-discriminatory reasons for the alleged actions taken, the plaintiff bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against him because of his protected status. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011). A plaintiff can demonstrate that a nondiscriminatory reason is mere pretext when an employer offers "shifting or inconsistent explanations for the challenged employment decision." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 236 (5th Cir. 2015) (quoting *Appelbaum v. Milwaukee Metropolitan Sewerage Dist.*, 340 F.3d 573, 579 (7th Cir.  2003). Suspicious timing, inconsistencies in the employer's explanation and evidence of a retaliatory motive can support a finding of pretext. *West v. Honeywell Int'l Inc.*, 558 F. Supp. 3d 369, 381-82 (S.D. Tex. 2021). Another method of proving pretext is through the disparate treatment theory, where the employee can identify a coworker of nearly identical circumstances, who was treated more favorable. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017); *see also Vaughn*, 665 F.3d at 637.

Here, the Defendant argues that Plaintiff cannot show pretext because the evidence he has produced shows merely a subjective belief that discrimination is the basis of his constructive discharge, and that his conclusory allegations, speculation, and unsubstantiated assertions are not sufficient to survive summary judgment. R. Doc. 46-2, at p. The Court disagrees. DeJean has presented evidence which supports his claim that his supervisors and IAD ignored his appeals. In fact, he was not even asked to provide information or evidence in his defense, even though it is

---

incorporate new evidence of additional comparators in their opposition. R. Doc. 57. The Court granted this motion and has reviewed the proposed pleading. The Court finds the incorporation of the additional comparators, Deputies Andrew Scott and Jesse Bertrand, strengthen the existence of a genuine issue of material fact as to the fourth element of Plaintiff's racial discrimination claims. *Id.*

customary to do so. R. Doc. 42-16 at p. 1542-1543; R. Doc. 53-9 at p. 68. This calls into question the accuracy and credibility of the investigations that served as a basis for his written reprimands. Additionally, he points to deposition testimony by Officer Blackwell who stated: "there is no special training for investigators when it comes to discrimination claims, and there is no protocol in place to ensure that similar offenses are disciplined in a like manner." R. Doc. 53-26 at 125. This lack of uniformity and training is exemplified by the suspiciously long periods of time it took IAD to issue punishment, and the fact DeJean's discrimination complaint was pending more than three hundred thirty-six days after it was filed. Plaintiff has also pointed out discrepancies in Lt. Marion's testimony regarding the complaint she filed against him in January 2020. For instance, in her deposition, Lt. Marion states that she does not remember filing a complaint against DeJean and that he did nothing wrong except report incorrectly how he identified a suspect that he arrested. R. Doc. 53-11, at p. 52. However, her testimony is contradicted by the complaint she submitted to IAD, in which she alleges DeJean was untruthful in his report. *Id.* at p. 46. Thus, there are genuine issues of material fact as to whether JPSO's stated nondiscriminatory reasons are mere pretext, and summary judgment is not appropriate.

### B.  Title VII and LEDL Retaliation Claims

Next, the Court will address DeJean's retaliation claims under Title VII and LEDL. "To establish a prima facie case of retaliation, the plaintiff must establish that: (1) he participated in an activity protected by Title VII [or the LEDL]; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007).[2] Retaliation claims are analyzed under the same burden-shifting framework as

---

[2] The Fifth Circuit has previously noted that due to the substantive similarities between the Louisiana and federal

discrimination claims: "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. *Id.* After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *LeMaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007)). An employee has engaged in protected activity if he has (1) opposed any practice made an unlawful employment practice by the statute, or (2) made a charge, testified, assisted, or participated in any manner in a Title VII investigation, proceeding, or hearing. *Alleman v. Louisiana*, 698 F. Supp. 2d 644, 663-64 (M.D. La. 2010) (citing *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996)).

Defendant argues that Plaintiff cannot sustain his retaliation claims because a majority of the disciplinary actions taken against DeJean involved misconduct and/or complaints occurring before he submitted his complaint of discrimination in IAD. R. Doc. 46-2 at 29-30. However, this does not address the undisputed fact in the record that IAD decided on and issued punishment after DeJean filed his discrimination complaint. There is a genuine issue of material fact as to whether the filing of DeJean's complaint influenced the severity and content of IAD's written reprimands, and thus, summary judgment is not warranted.

### C.  Title VII Hostile Work Environment Claim

To state a claim that he has suffered a hostile work environment, Plaintiff must allege that (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the

---

retaliation statutes, the outcome of such claims will be the same under both statutes. Accordingly, this Court—like other courts have done in the past—will address DeJean's retaliation claims under the federal law. *McCoy*, 492 F. 3d at 556 n. 4 (analyzing plaintiff's retaliation claim "only under the applicable federal precedents" because "Louisiana's anti-discrimination statute. . .is 'substantively similar' to Title VII" such that "the outcome of [plaintiff's] . . . retaliation claims will be the same under the federal and state statutes.") (quoting *Trahan v. Rally's Hamburgers, Inc.*, 696 So. 2d 637, 641 (La. App. 1st Cir. 1997).

harassment was based on protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 125 (5th Cir. 2011) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

Workplace harassment affects a term, condition, or privilege of employment when it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hernandez*, 670 F.3d at 651 (quotation omitted). This standard does not require a "tangible psychological injury," but it does necessitate more than a "mere utterance of an . . . epithet which engenders offensive feelings in a[n] employee." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, (1986)). To determine whether the conditions of employment have been altered to the extent that the workplace has become "hostile," courts consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hernandez*, 670 F.3d at 651 (quoting *Ramsey*, 286 F.3d at 268). In addition, "the work environment must be 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, (1998)).

Here, Defendant argues that Plaintiff is unable to support his hostile work environment claim under Title VII because DeJean relies on one isolated, offhand comment made during a verbal altercation he had with Lt. Marion. R. Doc. 46-2 at 33. More specifically, Defendant contends that a singular statement alone cannot give rise to the requisite level of severe or pervasive to alter DeJean's employment or work environment. *Id.* However, contrary to

Defendant's position, the Fifth Circuit has held that even the single use of a racial epithet may support a hostile work environment claim when that incident is sufficiently severe under the totality of the circumstances. *Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022) (holding single use sufficient where direct supervisor referred to plaintiff as "lazy monkey a- n-"). During the argument between DeJean and Lt. Marion in January 2020, he contends that she stated to him "just because you are black, you don't have to be so [] stupid." R. Doc. 46-3 at 145. Accordingly, the Court finds that there is a genuine issue of material fact as to whether this statement was ever made by Lt. Marion and whether the level of its severity is sufficient to prove Plaintiff's hostile work environment claim. R. Doc. 53-11 at 122.

### D.  Conspiracy to Violate Human Rights Claims

Under La. Rev. Stat. § 51:2256(1), it is unlawful for an employer to conspire "[t]o retaliate. . . against a person because he has opposed a practice declared unlawful by this Chapter or by Chapter 3-A of Title 23 of the Louisiana Revised Statues of 1950, or because he has . . . participated in any manner in any investigation. . .under [the aforementioned chapters]." The plain text of the statute requires the plaintiff to provide evidence of a conspiracy to retaliate against them. *Cook v. Par. of Jefferson*, 621 F. Supp. 3d 666, 673-674 (E.D. La. 2022). A conspiracy is defined as an agreement by two or more persons to commit an unlawful act, coupled with an intent to achieve the agreement's objective, and action or conduct that furthers the agreement; a combination for an unlawful purpose. *Phelps v. Calumet Lubricants Co., LP*, No. CV 15-2625, 2016 WL 4497011, at *3 (W.D. La. Aug. 24, 2016).

Here, the Defendant argues that Plaintiff has not produced any evidence as to when and how the individuals alleged in his complaint supposedly conspired to retaliate against him. R-Doc 46-2, at p.  The Court agrees. In his opposition, Plaintiff cites multiple incidents of his co-

workers and supervisors separately filing complaints against DeJean to prove a conspiracy to retaliate against him. R. Doc. 53-2 at 31-33. However, Plaintiff has failed to provide any evidence that these actions were made pursuant to a common scheme to retaliate against him based on his race. Additionally, Plaintiff argues that text messages between Deputies Reine, Nelson, and Johnson demonstrate the existence of a conspiracy, but the messages do not contain any statements that could be construed as the three participants conspiring to act together to target or harass DeJean. R. Doc. 46-17 at 1494-1516. Instead, the conversations mostly revolve around a new deputy joining the patrol and their head supervisor, Lt. Silvey. *Id.* There is a brief mention of a pre-existing rumor about DeJean; however, the content of that rumor is never mentioned. *Id.* at 1506-07. Furthermore, the text messages in question were only between officers in Night Watch 2; others who Plaintiff alleges participated in the conspiracy, such as Dyess, Brinser, Marion, and Wingrove, were not even parties to the text messages. *Id.* As such, the Plaintiff has failed to provide any evidence that JPSO employees were engaged in a joint effort to retaliate against him, and the Court finds summary judgment is appropriate on his § 51:2256 claim.

### 4.  CONCLUSION

Considering the foregoing reasons;

JPSO's Motion for Summary Judgment, R. Doc. 46, is **GRANTED in part and DENIED in part.** The Court grants summary judgment on Plaintiff's § 51:2256 conspiracy to violate human rights claim but denies the Defendant's motion as to DeJean's racial discrimination claims, retaliation claims, and hostile work environment claim.

New Orleans, Louisiana this 10th day of September, 2024.

_____
United States District Judge